Leonard E. RICH et al., Petitioners,

v.

UNITED STATES of America et al.,
Respondents.

Civ. No. 4281.

United States District Court,
S. D. Ohio, W. D.

June 6, 1974.

Roy H. Horn, Dayton, Ohio, for plaintiff.

William H. Milligan, U. S. Atty., by Gary Brinsfield, Asst. U. S. Atty., Dayton, Ohio, for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court on the cross motions for summary judgment filed by the parties.

Involved is a judicial review of a Revocation of License under the Gun Control Act of 1968 (18 U.S.C. ¶ 921 et seq.)

In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does make the following findings of fact and determines the following conclusions of law.

I.  Findings of Fact

1.

At all times involved herein petitioners Leonard E. Rich and Charles Rich d/b/a Rich Loan Company operated a pawnshop in the city of Dayton, Ohio.

2.

In accordance with the Gun Control Act of 1968 petitioners applied for and

received a license to deal in firearms and ammunition. Such license was renewed effective July 1, 1970 and timely application for renewal has been made in each succeeding year.

### 3.

On April 24, 1970 a special investigator visited the petitioners' premises and found the recordkeeping system to be in violation of the requirements of 26 C.F.R. 178 (Joint Exhibit 4—Proceedings of Hearing Examiner).

### 4.

On June 24, 1970, a warning was mailed to the petitioners stating that continued failure to maintain records required by the regulations might result in referral to the United States Attorney for prosecution.

### 5.

On October 2, 1970 a special investigator again visited the petitioners' premises and found instances of failure to properly complete Form 4473.

### 6.

On November 11, 1970 the Acting Assistant Regional Commissioner (Alcohol, Tobacco and Firearms Division) sent to the petitioners a Notice of Contemplated Revocation of License pursuant to 18 U.S.C. § 923(e)[1] and 26 C.F.R 178.71.[2] The notice charged willful violation of 18 U.S.C. § 922(m)[3] by failure to

properly maintain records which were required by the provisions of 18 U.S.C. § 923.[4]

### 7.

Following an informal hearing on December 29, 1970, a Notice of Revocation of License was sent February 10, 1971 (Joint Exhibit 7—Proceedings of Hearing Examiner). An administrative hearing before a hearing examiner was held March 18 and April 12, 1971 resulting in a recommendation of license revocation. A Final Notice of Revocation was issued June 18, 1972.

### 8.

All procedural steps required by the Gun Control Act of 1968 and regulations thereunder have been taken by both parties and this matter is properly before the Court.

## II. Opinion

The Court's authority to review the decision of the Secretary revoking the petitioners' license is conferred by § 923(f)(3) of the Gun Control Act of 1968. The legislative history of this provision indicates that Congress intended that the review should be "de novo." 1968 U.S.Code Cong. and Admin.News, p. 4410, pp. 4422, 4423. A determination "de novo" places the review in an entirely different posture than a review of administrative decisions generally. ". . . the decision of the Secretary

1. 18 U.S.C. § 923(e) provides:
The Secretary may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has violated any provision of this chapter or any rule or regulation prescribed by the Secretary under this chapter. The Secretary's action under this subsection may be reviewed only as provided in subsection (f) of this section.

2. 26 C.F.R. § 178.71 provides, inter alia:
Whenever the Assistant Regional Commissioner has reason to believe that a licensee has violated any provision of the Act or this part, he may issue a notice, on Form 4499, of contemplated revocation of the license . . . The Assistant Regional Commissioner shall afford the licensee 15 days from

the date of receipt of the notice in which to request a hearing prior to revocation of the license . . . . .

3. 18 U.S.C. § 922(m) provides:
It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer or licensed collector knowingly to make any false entry in, or fail to make appropriate entry in, or fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

4. 18 U.S.C. § 923(d)(1)(C) provides:
Any application shall be approved if the applicant has not willfully violated any provisions of this chapter or regulations issued thereunder.

is not clothed with any presumption of correctness or other advantage. The standards of judicial review of administrative decisions used in some other connections, i. e. the 'credible evidence' standard and the 'abuse of discretion' standard, are not applicable to the instant proceeding because they are inconsistent with the concept of 'de novo' trial in this Court." Weidner v. Kennedy, 309 F.Supp. 1018, 1019 (C.D.Cal. 1971); *Accord*: Mayesh v. Schultz, 58 F.R.D. 537 (1973).

Prior to proceeding to a review of the record, the Court has been called upon by the parties to resolve conflicting interpretations of the provisions of 18 U. S.C. § 923(f). Lacking the guidance of previous judicial consideration of license revocation, the Court must seek to determine Congressional intent for the statutes in question.

A review of the history and composition of the Gun Control Act of 1968 is necessary. The legislative history of the Act, as set forth in 1968 U.S.Code Cong. and Admin.News, p. 2112 et seq. and 1968 U.S.Code and Admin.News, p. 4410 et seq., reveals concern over the senseless slaughter occurring throughout the nation as a result of uncontrolled sales of firearms. Congress found that the total lack of uniform controls in the sales of firearms resulted in frustration of local controls, even when they existed and were rigidly enforced. Increasing crime rates, largely made possible by almost totally unrestricted access to inexpensive and easily concealed handguns by minors, criminals and the insane, were found to threaten the security of every citizen. Against this background, Congress enacted the criminal provisions found in 18 U.S.C. §§ 922, 924.

At the same time, however, Congress made it clear that its purpose was not to place undue and unnecessary federal restrictions upon those citizens engaged in lawful activities. The provisions of the Gun Control Act of 1968 were not designed to deprive every citizen access to firearms, but merely to implement those restrictions necessary to achieve its purposes. The thrust of § 922(m) dealing with sales and record-keeping by licensed dealers is clearly directed at intentional violations.

It seems apparent that § 923 is intended to provide safeguards from the overzealous application of the Act's provisions in relation to license holders and applicants. This is consistent with the overall policy that firearms restrictions were only those reasonably necessary to implement the criminal provisions. It is likewise consistent with the legislative intent that firearms be available to the public through licensed dealers. Finally, it is consistent with the notice that a new comprehensive scheme of federal regulation should not be employed in such a manner as to destroy those very business concerns which are charged with the responsibility of carrying it out.

The licensing provisions of § 923 impose a duty upon the Secretary to issue a license unless the applicant is disqualified by the carefully defined exceptions of § 923(d)(1).[5] Sections 923(d)(1)(C) and (D) provide that li-

---

5. Section 923(d) provides:

(d)(1) Any application submitted under subsection (a) or (b) of this section shall be approved if—

(A) the applicant is twenty-one years of age or over;

(B) the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, ship-

ping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (h) of this chapter;

(C) the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;

(D) the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application; and

(E) the applicant has in a State (i) premises from which he conducts business subject

censes may be denied only for "willful" violations of the provisions of the Act or regulations or willful failure to disclose material information. The lack of an equivalent willful intent in the revocation section ¶ 923(e) creates an anomalous situation. Apparently the Secretary may revoke for error, inadvertence, or simple ignorance of regulation. Such revocation then becomes an exercise in futility if thereafter the Secretary by the plain language of ¶ 923(d) must reissue the license absent a showing of willful violation. It cannot be that Congress intended this formalistic paradox. Accordingly, we hold that the Secretary must show a willful violation of statutes or rules and regulations promulgated thereunder in order to prevail herein.

The Secretary has urged that "willful" be deemed to include careless disregard as well, citing Goodman v. Benson, 286 F.2d 896 (7th Cir. 1961) and Capitol Packaging Company v. United States, 350 F.2d 67 (10th Cir. 1965) as authority for that construction. These cases, however, dealt with other statutes and do not provide the Court with the same insight that a careful examination of the Gun Control Act itself imparts. "Willfully" is a word of many meanings. Its construction is often influenced by its context, and its meaning should not be divorced from the purpose which Congress intended from its use. The Gun Control Act is a criminal statute. Indeed, § 922(m), which the petitioners allegedly violated, "willfully" is a criminal provision. If criminal prosecution instead of civil revocation were the proceeding with which the Court was currently engaged, it seems clear that a general criminal intent would be required for conviction. This demands no

more be shown than an intent to do or fail to do that which the Act makes unlawful, but it requires more that a showing that technical violations in fact occurred. "Willfully" in the criminal context has been defined to mean with design, and does not require an evil intent except that the accused shall have purposefully or intentionally failed to obey the statute, having knowledge of the facts. Schmeller v. United States, 143 F.2d 544 (6th Cir. 1944).

■ The language of § 923(d)(1) (C), when read together with the word "willfully" in § 923(d)(1)(D) immediately following, supports the conclusion that Congress was concerned with purposeful, intentional conduct to be punished by revocation of licenses rather than mere negligence on the part of the licensee. The legislative history of § 923(d) reveals that Congress intended the Secretary to carry the burden of proof in denial or revocation of licenses. 1968 U.S.Code Cong. and Admin.News, p. 4410, p. 4422. § 101 of Pub.L. 90–618 declared that the purpose of the Act was not to impose undue or unnecessary restrictions upon firearms transactions. A construction of the term, "willfully", to include purposeful, intentional behavior, would further the protective concern which Congress intended through the enactment of § 923(d)(1) and the generous review provisions of § 923(f)(3).

In this context the Court notes that economic disaster would result to these petitioners upon the revocation of their gun license. A business of more than 30 years is directly threatened by technical violation of a relatively new and far reaching statute. Congress was aware of the grave consequences which would attach to the revocation of a license and provided that it should only occur in

---

to license under this chapter or from which he intends to conduct business within a reasonable period of time. . . .

(2) The Secretary must approve or deny an application for a license within the forty-five-day period beginning on the date it is received. If the Secretary fails to act within such period, the applicant may file an action under section 1361 of title 28 to compel the Secretary to act. If the Secretary approves an applicant's application, such applicant shall be issued a license upon the payment of the prescribed fee.

those instances in which the violations were "willful" in the sense of being intentional and purposeful. *See also:* Individual views of Messers Dirksen, Hruska, Thurmond and Burdick, 1968 U. S.Code Cong. and Admin.News, p. 2112, pp. 2292–2293.

■ Before imposing such a harsh penalty, the Court must consider the specifics of the asserted violations. The record reveals that prior to April 24, 1970, an employee of the petitioners, one Nick Argeros, was under investigation for sales of handguns prohibited by the provisions of the Gun Control Act of 1968. There was no evidence produced, however, that the petitioners either acquiesced in or had knowledge of their employee's activities. The vast bulk of evidence introduced to show such employee's violations of the statute had little application to the proceeding below. The Notice of Revocation issued February 10, 1972 gave no warning that the hearing was to be held on matters concerning the employee's illegal activities despite the clear language of § 923(f) requiring that written notice of the Secretary's grounds for revocation be given prior to its effective date. The notice provisions of § 923(f)(1) are not mere formalisms designed to restrict the government in its proofs. Their purpose is to provide the license holder with notice of the charges that he may prepare a defense. Those considerations are served when the Secretary confines his evidence to proof of charges upon which the license was revoked. It is something less than due process when prejudicial testimony of the criminal activities of one of the petitioners' employees is introduced without even attempting to show the petitioners were aware of them.

On April 24, 1970, an inspection of the petitioners' business premises was conducted by special investigators Myers and Weissinger. They found the petitioners had failed to properly maintain records required by the Act in that: (1) The receipt and disposition of all firearms were not recorded in a bound record book; (2) The disposition of all firearms was not recorded upon Forms 4473 (Firearms Transaction Record); (3) The disposition of all ammunition was not recorded in a bound record book.

On October 2, 1970, the premises were again inspected by special investigator Myers. At that time bound record books for the disposition of firearms and ammunition were being maintained. The government produced testimony to the effect that 88 of a total of 370 Forms 4473 were not included in the record as evidence in this case. Testimony from special investigator Myers is upon the record as to two of the Forms 4473 and the errors they contained. The testimony shows that in reference to these two forms there were substantial errors in completion of required information, but that both transactions occurred prior to the warning letter of June 24, 1970.

The petitioners testified that following the April 24, 1970 inspection they made good faith efforts to comply with the record keeping requirements of the statute. The evidence supplied by the Secretary supports the contention that substantial progress was in fact made. The petitioners' allegations of now total compliance has not been challenged.

■ The evidence taken as a whole supports the conclusion that the petitioners failed to maintain records required under the provisions and regulations of the Gun Control Act of 1968. The evidence does not support the conclusion that it was willfully done so as to bring the petitioners' conduct within the prohibited offenses of § 923(e). While the Secretary has shown negligence, he has not shown willful violation of statute or rules and regulations promulgated thereunder.

## III. Conclusions of Law

### A.

The Court has jurisdiction of this matter in accordance with 18 U.S.C. § 923(f)(3). All procedural steps necessary to bring this matter before the Court have been taken.

### B.

To revoke a gun dealers license in accordance with § 923(e) the Secretary must show a willful violation of statute or rules and regulations promulgated thereunder.

### C.

While the Secretary on the record and memoranda submitted herein has shown negligent conduct on the part of petitioners, he has shown neither willful violation of statute or rules and regulations.

### D.

The action of the Secretary in revoking petitioners' license should be, and it is hereby, set aside.

The Court, in accordance with § 923(f)(3) does hereby remand this matter to the Secretary of the Treasury with instructions to impose a suspension not to exceed sixty (60) days upon petitioners as pawn brokers dealing in firearms and ammunition other than destructive devices. Such suspension shall not apply to redemption of firearms held by petitioners as security for loans made prior to the effective date of such suspension.

It is so ordered.

## ORDER

Pursuant to Rule 60(a), Federal Rules of Civil Procedure, the fifth line of the ninth page of the Opinion issued by this Court on June 6, 1974, is hereby corrected to read ".  .  . 10, 1971."

It is so ordered.