Sigmund SHYDA, Jr., t/d/b/a
Shyda's Gun Shop

v.

DIRECTOR, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, UNITED STATES DEPARTMENT OF the TREASURY.

No. 77–251 Civil.

United States District Court,
M. D. Pennsylvania.

Oct. 31, 1977.

Horace A. Johnson, Lemoyne, Pa., for plaintiff.

S. John Cottone, U. S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

At issue in this case is a license revocation ordered by the Bureau of Alcohol, Tobacco and Firearms (the Bureau), Department of the Treasury. The licensee is a resident of this District and has petitioned this Court within 60 days of the Bureau's order as an "aggrieved party" in accordance with 18 U.S.C. § 923(f)(3). The respondent-Bureau has moved for summary judgment and in support has filed a memorandum of law and the administrative record upon which the Director ordered revocation. Petitioner, aware of his statutory right to submit additional evidence in this proceeding, has filed an opposing memorandum of law but no additional documentation. Presently before the Court is the question of whether there remains a material issue of fact for which a license revocation hearing must be conducted. See Fed.R.Civ.P. 56.

The genesis of petitioner's difficulties is the admitted failure to maintain records required by the Gun Control Act of 1968, 18 U.S.C. § 921 et seq.[1] In general petitioner's problems related to the maintenance of the "acquisition-disposition book" used to record all business transactions involving firearms, the maintenance of similar records for ammunition, and the use of special forms (Form 4473's) to be executed when there were dispositions of firearms. Specifically, petitioner was charged with violating 18 U.S.C. § 923(g) and 27 C.F.R. §§ 178.124 & 178.125 (1976).

On December 3 and 4, 1974, Bureau agents conducted an investigation of petitioner's business premises. Their preliminary investigation immediately prompted a complete inventory of the firearms and ammunition on hand and a very thorough check of petitioner's recordkeeping responsibilities. On June 26, 1975, a Notice of Contemplated Revocation was issued to petitioner, who requested an informal hearing, which was conducted November 12, 1975. On January 20, 1976, a Notice of Revocation was issued. Again, petitioner requested a hearing. A formal hearing on the record was conducted pursuant to 27 C.F.R. § 178.75(b) in Harrisburg, Pa. on April 6, 1976 by Administrative Law Judge Kenneth L. Travis. Judge Travis found that the Bureau had proven its case:

"The record keeping violations as set forth in the notice of revocation were committed willfully by [petitioner] who was aware of the record keeping requirements of [the statute] and he neglected to keep and knowingly failed to keep and maintain required records."

Recommended Decision of the Administrative Law Judge at 11 (Document ¶ 4). Recognizing that petitioner's license was subject to revocation, Judge Travis nevertheless recommended "a supplemental investigation in the nature of a pre-sentence inquiry to determine the current practice of the license holder." Id. at 22. On January 6, 1977, the Director approved the findings of fact and conclusions of law of Judge Travis, but found that petitioner's record-keeping practices during the period of time that his license was in jeopardy were not relevant, and, moreover, that the Administrative Law Judge's decision was confined to consideration of matters within the certified record.[2] He therefore refused to schedule a supplemental investigation, and ordered the license revoked. Although petitioner claims that his recordkeeping practices are now in compliance with statute and regulation, it appears that the Bureau has made no further investigation of petitioner's business.

---

1. Although the matter is not clearly established in the record, there is some indication that petitioner's wife, who at times assisted him in his business, was convicted for violations of the Act, served a prison term, and was on parole at about the same time as petitioner's recordkeeping difficulties surfaced.

2. See 27 C.F.R. § 178.78.

██ This matter is before me for consideration de novo. The statute provides for the introduction of evidence beyond that contained in the administrative record:

"In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding. If the court decides that the [Director] was not authorized to . . . revoke the license, the court shall order the [Director] to take such action as may be necessary to comply with the judgment of the court."

18 U.S.C. § 923(f)(3).[3] As the statutory history of this section indicates, Congress contemplated that a proceeding in the district court upon the petition of the aggrieved licensee would be a "de novo review of . . . [the] revocation . . . ." See H.R.Rep.No.1577, 90th Cong., 2d Sess., reprinted in [1968] U.S.Code Cong. & Ad. News p. 4423.[4] The better reasoned cases agree that the ordinary standard of administrative review does not apply when the Bureau seeks revocation of a license to sell firearms and ammunition. See Rich v. United States, 383 F.Supp. 797, 800–01 (S.D.Ohio 1974); Weidner v. Kennedy, 309 F.Supp. 1018, 1019 (C.D.Cal.1970); Mayesh v. Schultz, 58 F.R.D. 537, 538–39 (S.D.Ill. 1973). Cf. Casanova Guns, Inc. v. Connally, 454 F.2d 1320, 1321 (7th Cir. 1972).[5] Consequently, the Court will examine this matter afresh and, as in any motion for summary judgment, use the entire record to determine whether there is a material issue of fact necessitating further proceedings. See Mayesh, 58 F.R.D. at 539.[6]

I have concluded that the respondent-Bureau is entitled to a partial summary adjudication with respect to the charged violations. See 10 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2737, at 681 (1973). Accordingly, I have set forth findings of fact that are without substantial controversy. See Fed.R.Civ.P. 56(d); Wright & Miller, supra, at 675.

### General Findings of Fact

1. Petitioner is a licensed firearms dealer holding License No. 23–5866 as a dealer in firearms other than destructive devices or ammunition for other than destructive devices. He does business as Shyda's Gun Shop, 1703 South Lincoln Avenue, Lebanon, Pa. (Govt. Exh. 1).[7]

2. The petitioner has been a licensed firearms dealer since 1966. (N.T. 79).

3. Petitioner's sole means of support is his firearms business.

4. On February 2, 1971, Special Agent Stephen Abbate of the Bureau reviewed the firearms records at Shyda's Gun Shop and made a firearms license compliance investigation. (Govt. Exh. 12) During this investigation he found deficiencies in the records of the Shyda Gun Shop in four major areas: (1) the disposition of handguns was not

---

3. The Bureau Director is considered the "delegate" of the Secretary of the Treasury. See 18 U.S.C. §§ 921(a)(18) & 923(f)(3).

4. The House version of the Act was approved after conference. There were no changes made in the House bill after preparation of this Report relevant to a license revocation in a district court.

5. Counsel for the Bureau has cited several reported and unreported cases for the proposition that the "substantial evidence" standard applies. These cases are unpersuasive since they neglect to consider the legislative history of the Act. The statutory language framing the issue in the district court as a question of whether the Director is "authorized to . . . revoke" the license, is entirely consistent with the de novo nature of this proceeding. See Weidner, 309 F.Supp. at 1019.

6. What petitioner describes as a "sparse record" is, rather, over 300 pages of testimony and exhibits. While petitioner has the statutory right to submit additional evidence, a party cannot oppose a motion for summary judgment by merely asserting that the right exists and without offering the evidence in an appropriate form. See Fed.R.Civ.P. 56(e); Mayesh, 58 F.R.D. at 537; 10 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 2739 (1973).

7. Unless otherwise noted, all references to notes of testimony and exhibits are to Document # 4 in this action, the certified administrative record from the Bureau of Alcohol, Tobacco, and Firearms of the Department of the Treasury.

being recorded on Form 4473's as required; (2) Form 4473's were not completely and properly filled out; (3) the book showing the acquisition and disposition of firearms was not bound; and (4) some firearm acquisitions were not being properly recorded. (N.T. 14–17).

5. During this 1971 visit to Shyda's Gun Shop, Abbate went over the "whole gamut" of regulations concerning the acquisition and disposition of firearms, with specific attention to recordkeeping responsibilities for firearms and ammunition, and mistakes in completion of Form 4473's, including the failure to sign each form, to specifically identify the firearm, and to obtain the certification of the transferee as to the legality of the transfer. (N.T. 17–18; Admin. Law Judge Exh. 1).

6. Abbate discussed other problems with petitioner at frequently held trap shoots. On these occasions recordkeeping responsibilities were also discussed, specifically the ammunition records. (N.T. 19–21).

7. On December 3 and 4, 1974, a search warrant was executed at Shyda's Gun Shop and an inventory was conducted. Participating in the inventory were Special Agents McCaughery, Manning, and Bowman and Regulatory Inspector Moore. (N.T. 38). At times petitioner and his wife assisted. (N.T. 101, 122). As a result of the inventory, petitioner was charged with the violations of the Gun Control Act that are at issue here.

*Findings as to Charge I*

8. In the Notice of Revocation (Govt. Exh. 8), petitioner was charged with a willful violation of 18 U.S.C. § 923(g) and 27 C.F.R. § 178.125(e) in that

"[a]pproximately sixteen hundred firearms were determined to have been sold or delivered without recording their disposition in your acquisition-disposition book."

Section 178.125(e) provides that

"(e)ach licensed dealer . . . shall . . . enter into a permanent record each receipt and disposition of firearms . . . .."

The subsection permits a seven-day delay in making an entry of a sale or other disposition into the bound acquisition-disposition book.

9. Of the 3,413 firearms shown on petitioner's acquisition-disposition book to have been acquired between December 12, 1973 and November 30, 1974, 2,453 showed no disposition. Since only 700 were on hand, over 1700 firearms had been sold without the entry of a disposition in the bound acquisition-disposition book. (Recommended Decision of the Administrative Law Judge at 8; Govt. Exh. 13; N.T. 37–39, 43–45).

10. It was not unusual for petitioner to sell 40 to 50 guns per day during the fall season, or about 300 during the seven-day period of grace allowed under the regulations. (N.T. 81; Finding 8). However, petitioner admitted delaying much of the recordkeeping responsibility to the month of January, after the end of the peak season for gun sales. (N.T. 81).

11. Prior to the Bureau's inventory, Special Agent McCaughery made an undercover purchase of a firearm from petitioner's wife who was selling firearms at a trap shoot in Maryland. He was not asked to fill out a Form 4473. During the inventory at Shyda's Gun Shop, McCaughery looked for and found a Form 4473 covering this purchase and an entry in the acquisition-disposition book. The Form 4473, however, was improperly filled out because it stated that the firearm had been sold to a person named "Krause". This was the firearm that McCaughery personally purchased, apparently under his own name. (N.T. 47–49).

12. Two other firearms that were purchased from Shyda's Gun Shop by Bureau personnel undercover also were found to have been sold without the proper disposition entry in the bound book. (N.T. 42).

13. Although petitioner contends that there were Form 4473's for all the dispositions made and that the forms prepared would allow later entry of the disposition in the bound book, there were more than 150

transactions for which this was not done. This number is arrived at by taking the total number of acquisitions (3,413), subtracting the number of firearms on hand (approximately 700), and comparing this number (2,713) with the actual number of Form 4473's found during the inventory (2,531). The difference between the estimated number of Form 4473's that should have been completed and the actual number found is 182. (Recommended Decision of the Administrative Law Judge at 10–11; Govt. Exh. 13; N.T. 43–45, 51). Moreover, in defending against charges that Form 4473's were often incomplete (*see* Finding 18 *et seq. infra*), petitioner contended that "in some instances" the forms found did not represent completed transactions. (N.T. 91) This further refutes petitioner's contention that the Form 4473's on hand would have enabled him to eventually complete the disposition entries in the bound book.

14. Petitioner admitted that he was at that time aware of the requirement that all dispositions be entered within the seven-day grace period. (N.T. 102–03).

*Findings as to Charge II*

15. In the Notice of Revocation (Govt. Exh. 8), petitioner was charged with a willful violation of 18 U.S.C. § 923(g) and 27 C.F.R. § 178.125(e) in that "[S]ixty firearms were found on the premises, the receipt of which had not been entered in your acquisition-disposition book." Section 178.125(e) provides that

"(e)ach licensed dealer . . . shall . . . enter into a permanent record each receipt and disposition of firearms . . . ."

The subsection also requires that an acquisition be recorded not later than the next day's close of business. The regulations speak of acquisitions, and apparently do not distinguish between firearms "acquired" for purposes of repair and those acquired for sale.

16. When the Bureau's inventory was conducted, there were 60 firearms found which had not been entered in the bound acquisition-disposition book. (N.T. 39).

The guns were both new and old. (N.T. 51–52).

17. Petitioner testified as to his belief that firearms which were not for sale (e. g., obsolete weapons and those held for repair) did not have to be entered as an acquisition in the bound book. (N.T. 93–95).

*Findings as to Charge III*

18. In the Notice of Revocation (Govt. Exh. 8), petitioner was charged with a willful violation of 18 U.S.C. § 923(g) and 27 C.F.R. §§ 178.124(a) & (c) in that

"(A) fifty-five Forms 4473 had incomplete entries in Section A, item 8;

(B) two Forms 4473 had no entry in Section B, item 10;

(C) six Forms 4473 were not signed by the purchaser;

(D) one Form 4473 had no entry in Section A, item 6;

(E) one Form 4473 had no entry in Section A, item 7;

(F) one Form 4473 had no entries in Section A, items 1 through 7, was not signed or dated by the purchaser and Section B was incomplete;

(G) four hundred forty one Forms 4473 had no entries in Section B, items 16, 17 and 18;

(H) approximately nineteen Forms 4473 were incomplete other than the description of the firearm."

19. Form 4473 contains two sections, one to be completed by the transferee (section A), and the other, by the transferor (section B). Items 1 to 7 of section A require entry of the transferee's name, height, weight, race, address, date of birth, and place of birth. Item 8 is a seven-part questionnaire designed to determine if the prospective purchaser is entitled to possess a firearm. Items 9 and 10 of section B require the transferor-licensee to state how he knows the prospective purchaser and upon what identification the transferor relied. Items 11 to 15 seek information on the type, model, caliber, serial number, and manufacturer of the firearm. Items 16 to 20 require entry of the name of the transferor, the

license number, the transferor's signature, his title, and the transaction number (if any). (Admin. Law Judge Exh. 1).

20. Section 178.124(c) provides that

"Prior to making an over-the-counter transfer of a firearm . . ., the . . . licensed dealer . . . so transferring the firearm shall obtain a Form 4473 from the transferee showing the name, address, date and place of birth, height, weight, and race of the transferee, and certification by the transferee that he is not prohibited . . . from receiving a firearm in interstate or foreign commerce. The licensee shall identify the firearm to be transferred by listing in the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm. Before transferring the firearm described in the Form 4473, the licensee (1) shall cause the transferee to identify himself in any manner customarily used in commercial transactions (e. g., a driver's license), and shall note on the form the method used, and (2) if satisfied that the transferee is lawfully entitled to receive the firearm, shall sign and date the form. . . ."

21. Nineteen Form 4473's were found containing only a description of a firearm. These guns were shown on the disposition sheet as having been acquired but were not found during the inventory. (N.T. 46–47, 53–56).

22. While one of the Agents testified that there was "no possibility" that guns were missed (N.T. 122–23), petitioner testified that an equivalent number of guns did turn up that had not been inventoried. (N.T. 134–35). He did not testify, however, that the guns turned up matched the description on the partially completed Form 4473's; there is no evidence in the record on this question.

23. Of the 2,531 Form 4473's found during the inventory, 441 lacked entries in items 16 to 18, 55 were not complete as to item 8, and nine forms (not 11 as charged) had miscellaneous omissions. (N.T. 51, 63–67).

24. Special Agent McCaughery "was not about to compare them with the book," which means that he did not compare the 2,531 Form 4473's with the acquisition-disposition book. (N.T. 51, 77). Thus, it cannot be certain that each Form 4473 found represented an actual disposition. But, as pointed out, for every Form 4473 that did not represent a completed transaction (thereby tending to exculpate petitioner on Charge III), there was another disposition for which no Form 4473 was prepared (thereby further inculpating him on Charge I). See Finding 13 supra).

25. In addition to claiming that not all the Form 4473's represented completed transactions, petitioner also testified that he believed it to be permissible to complete items 16–18 at the time the disposition entry in the bound book was made. (N.T. 95–96).

### Findings as to Charge IV

26. In the Notice of Revocation (Govt. Exh. 8), petitioner was charged with a willful violation of 18 U.S.C. § 923(g) and 27 C.F.R. § 178.125(e) in that "[t]he firearms acquisition-disposition book was improperly maintained in that it did not show the name and address of the persons to whom firearms were transferred." Section 178.125(e) provides that

"(t)he record shall show the date of the sale or other disposition of each firearm . . . ., the name of the person to whom the firearm . . . is transferred, and the address . . . to whom transferred. . . ."

The subsection also provides that the date and the name and address of the transferee need not be entered in the acquisition-disposition book "if the licensed dealer . . . serially numbers his Forms 4473 and files them numerically" [emphasis added].

27. Petitioner did not keep his Form 4473's in numerical order. (N.T. 71–72). Nevertheless, he recorded only the serial number of the Form 4473's and failed to enter the date, name, and address of the transferee in the acquisition-disposition book (Govt. Exh. 13; N.T. 78).

### Findings as to Charge V

28. In the Notice of Revocation (Govt. Exh. 8), petitioner was charged with a willful violation of 18 U.S.C. § 923(g) and 27 C.F.R. § 178.125(c) in that "[t]he ammunition-disposition records were not maintained in a bound book and not maintained in chronological order." Section 178.125(c) provides that

> "[t]he sale or other disposition of ammunition . . . shall . . . be recorded in a bound record at the time such transaction is made. . . . The bound record shall be maintained in chronological order by date of sale or disposition of the ammunition, and shall be retained on the licensed premises of the licensee for a period of not less than two years following the date of the sale or disposition of the ammunition recorded therein . . . ."

29. Petitioner admitted that ammunition records were improperly maintained, that he knew of his legal obligations, and that most licensees did maintain the required records. (N.T. 99).

### DISCUSSION

█ In order to prove a violation of 18 U.S.C. § 923(g) and 27 C.F.R. §§ 178.124 & 178.125 the Bureau must establish that the licensee "willfully" failed to maintain the proper records. Petitioner argues that the Bureau has not proven willfulness, and that therefore summary judgment should not be granted. In a civil context such as this, the definition of "willfully" is dependent upon the specific statutes involved. *See Irey v. Occupational Safety and Health Review Comm'n*, 519 F.2d 1200, 1207 (3d Cir. 1974); *Rich*, 383 F.Supp. at 800. For the violations alleged here, the Bureau must prove that petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping require-

ments. *See Rich*, 383 F.Supp. 800–01; *McLemore v. United States Treasury Dep't*, 317 F.Supp. 1077, 1079 (N.D.Fla.1970); *Mayesh*, 58 F.R.D. at 540. *Cf. Rex Wine Corp. v. Dunigan*, 224 F.2d 93, 95 (2d Cir. 1955). There is no requirement of bad purpose as might be imposed were the Court faced with determining the definition of willfulness in a criminal prosecution. *Cf. Intercounty Construction Co. v. Occupational Safety and Health Review Comm'n*, 522 F.2d 777, 779–80 (4th Cir. 1975).

█ In all major respects the Bureau has proven that extremely serious breaches of recordkeeping practices occurred; there is no substantial controversy as to these matters in any of the five charges.[8] While petitioner contends that the "record is devoid of clear proof that the petitioner purposefully and intentionally committed acts in violation of the record-keeping requirements," I am satisfied that there can be no serious dispute as to the willfulness of the violations in Charges I and V: at the formal administrative hearing petitioner admitted on the stand under oath that he was aware of the specific legal obligation at issue in the two Charges, i. e. that he knew of his obligations to record dispositions of firearms within seven days and to maintain disposition records for ammunition. *See* Findings 14 & 29 *supra*. Consequently, the Bureau is entitled to a partial summary adjudication on Charges I and V. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure, *Civil* § 2737, at 681 (1973).

I will soon schedule a pretrial conference in this matter at which time I will consider (1) the effect of this partial adjudication on the overall question of license revocation; (2) the necessity and desirability of holding a hearing to determine the "willfulness" of the recordkeeping breaches listed in Charges II, III, and IV[9] given the serious-

---

8. A disputed issue of fact does exist with respect to Charge III(H), *see* Findings 21 & 22 *supra*: the Bureau maintains that 19 incomplete Form 4473's represented dispositions that were not recorded; petitioner contends that guns (presumably matching) were later found to cover these forms. Given the number of

breaches that occurred, several of which could by themselves support a license revocation, this dispute is not substantial.

9. The record contained no small amount of evidence with regard to willfulness of these breaches as well. As to these matters, and on

ness of the violations in Charges I and V; and (3) the sanction that should eventually be imposed by the Court.[10]

this record, petitioner's state of mind at the time of the breaches remains open to question; summary judgment on Charges II, III, and IV would be inappropriate. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure, *Civil* § 2730 (1973).

10. *See* 18 U.S.C. § 923(f)(3); *Rich v. United States*, 383 F.Supp. 797 (S.D.Ohio 1974) (Bureau instructed to impose suspension rather than revocation).