**FIN & FEATHER SPORT SHOP, INC., a Nebraska corporation, d/b/a Omaha Midwest Wholesale, d/b/a Annie Oakley Wholesale, d/b/a Starr Distributors, Plaintiff,**

v.

**UNITED STATES TREASURY DEPARTMENT, INTERNAL REVENUE SERVICE, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS; William Miller, Secretary of the Treasury of the United States; David R. Chupp, Regional Regulatory Administrator, Department of Treasury, Bureau of Alcohol, Tobacco and Firearms, Defendants.**

Civ. No. 79-O-448.

United States District Court,
D. Nebraska.

Dec. 12, 1979.

---

Richard S. Reiser, Omaha, Neb., for plaintiff.

Gary Vanderhoof, U. S. Treasury Dept., Chicago, Ill., Paul W. Madgett, Asst. U. S. Atty., Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court upon the plaintiff's motion for a preliminary injunction [Filing # 2] and defendants' motion for summary judgment [Filing # 12].

*Background*

On August 28, 1979, the plaintiff, Fin & Feather Sport Shop, Inc., d/b/a Omaha Midwest Wholesale, d/b/a Annie Oakley Wholesale, and d/b/a Starr Distributors [hereinafter referred to as plaintiff] filed a petition for review [Filing # 1] of the deni-

al of its application for renewal of its federal firearms license by the Bureau of Alcohol, Tobacco and Firearms, Department of Treasury [hereinafter referred to as the Bureau] under the Gun Control Act of 1968, 18 U.S.C. §§ 921, *et seq.* [hereinafter referred to as the Act]. Along with its petition for review, the plaintiff filed a motion for a temporary restraining order [Filing # 3] and a motion for preliminary injunction.

On August 29, 1979, this Court entered a temporary restraining order [Filing # 8] and set the matter for hearing on September 10, 1979. After various continuances, the hearing was reset for October 11, 1979. During this time, the Bureau moved for summary judgment and, in support thereof, it filed the administrative record upon which the Bureau had ordered denial of plaintiff's application [Filing # 11].

On October 11, 1979, this Court held a hearing on plaintiff's motion for a preliminary injunction and the Bureau's motion for summary judgment. At the conclusion of the hearing, the Court ordered final written arguments from the parties, delineating their respective positions. Final written arguments having been submitted, the Court makes the following findings of fact and conclusions of law.

*Facts* [1]

In December of 1970, James E. Baudo purchased the stock of Fin & Feather located at 1014 Prairie Lane Drive in Omaha, Nebraska, for one dollar, assuming all liabilities [Tr. 575:15–576:16]. In 1971, the store was moved to 3033 N. 93rd Street, Omaha, operating until January of 1975, when it was closed [Tr. 577:11–22]. In 1972, Mr. Baudo opened up another retail firearms outlet at 8724 L Street, Omaha, and Federal Firearms License [FFL] No. 47–05873 was issued to Fin & Feather Sport Shop, Inc. [Tr. 578:1–24; Govt. Ex. # 7]. During this period of time, Mr. Baudo also owned or had an interest in retail firearms stores in Council Bluffs, Iowa, and in Lin-

coln, Fremont and Auburn, Nebraska [Tr. 578:9–18; 579:8–18]. Fin & Feather gradually became engaged in the wholesale firearms business and in 1974, the trade name Omaha Midwest Wholesale Distributors [hereinafter referred to as Omaha Midwest] was added to the federal firearms license.

In the summer of 1975, Fin & Feather, d/b/a Sun Discount, was established and FFL No. 47–06777 was obtained [Tr. 585:20–586:3]. At that time, Mr. Baudo was interviewed by Bureau Inspector W. A. Nelson and the law, regulations and records pertaining to the conduct of a firearms business were explained to him [Tr. 20:1–23:11; Govt. Ex. # 13]. Baudo acknowledged same by signing the appropriate form [Govt. Ex. # 14; Tr. 27:5–28:5].

On January 4, 1977, an inspection conducted at the premises of Sun Discount disclosed a firearms recordkeeping system that was interwoven with that of Omaha Midwest [Tr. 107:7–108:16]. An inspection of Omaha Midwest was initiated and conducted simultaneously with that at Sun Discount. Violations were found at both licensees and brought to the attention of Mr. Baudo, president of Fin & Feather, and Mr. Patrick Shannon, manager of Sun Discount. Bureau Inspector Phyllis Simonsen explained the law and regulations and the corrective action needed to be taken. [Govt. Ex. # 's 20 through 24; Tr. 113:17–21; 124:20–126:5; 179:7–183:3].

On May 16, 1977, a letter of admonition was sent to Omaha Midwest via certified mail setting forth numerous violations found and advising the corporation of its responsibilities [Tr. 16:15–18:2; Govt. Ex. # 11]. The certified receipt was signed by Mr. Baudo [Govt. Ex. # 11].

Thereafter, in August of 1977, Bureau Inspector Timothy Korb conducted a compliance inspection at the premises of Omaha Midwest [Tr. 35:13–36:22; 37:11–38:14]. Numerous violations pertaining to recordkeeping requirements were still found [Govt. Ex. # 16; Tr. 38:15–39:3; 40:2–

1. Unless otherwise noted, all references to exhibits and testimony are to Exhibit # 4, the certified administrative record from the Bureau

of Alcohol, Tobacco and Firearms, which was offered by both parties and received by the Court at the October 11 hearing.

41:7]. These violations were documented, brought to Mr. Baudo's attention, and explained to him. [Govt. Ex. # 17; Tr. 41:8–43:12].

Since the plaintiff had failed to keep the proper records, Mr. Baudo was requested in November of 1977 to attend an admonitory conference at the Bureau's offices in Chicago, Illinois. At the conference, Mr. Baudo was again advised of the recordkeeping violations found and plaintiff's failure to take any steps toward correcting them. He was also advised of the seriousness with which the Bureau viewed his history of noncompliance [Tr. 75:3–79:1; 79:20–80:23]. Mr. Baudo acknowledged familiarity with the law and regulations [Tr. 82:18–20] and gave his personal assurances that corrective action would be taken with regard to plaintiff's firearms operations [Tr. 82:14–17]. A recall inspection in three to six months was recommended [Govt. Ex. # 19].

However, despite Mr. Baudo's personal assurances, the corrective action was not taken. From July 13, 1978, to October 5, 1978, an inspection of Omaha Midwest was conducted. Serious violations in recordkeeping were still found [Govt. Ex. # 45]. During the inspection, the disposition of 1800 firearms was unaccounted for. However, as of January, 1979, after over 1000 Bureau manhours, the Bureau was able to locate 848 of the missing firearms [Govt. Ex. # 42]. As a result of the inspection, nine different violations were found [Govt. Ex. # 's 45 and 46; Tr. 282:4–288:22] and the denial action was commenced [See Govt. Ex. # 's 25, 31 through 41; Tr. 190:13–270:9].

On December 29, 1978, David R. Chupp, Regional Administrator for the Bureau, issued a Notice of Denial of Application for License [Govt. Ex. # 's 1 and 1a] to the plaintiff. In said notice, eight different violations of the Code of Federal Regulations were cited. 27 C.F.R. § 178.1 et seq.

On January 8, 1979, Mr. Baudo requested a hearing on the denial of plaintiff's application. Pursuant to Mr. Baudo's request, a hearing was held on March 13, 1979. The hearing lasted until March 16, 1979, after which the Hearing Officer, William K. Arney, finding that the plaintiff had committed willful violations of the Act, recommended that plaintiff's renewal application be denied [See Ex. B at 30–31].

On January 27, 1979, Mr. Chupp concurred in the Hearing Officer's recommendation [Ex. B at 31]. Thereupon, on June 28, 1979, Mr. Chupp issued a Final Notice of Application or Revocation of Firearms License to Fin & Feather [Ex. A].

*Applicable Law*

■ The Court's authority to review the denial of plaintiff's application is conferred by Section 923(f)(3) of the Act, which provides as follows:

If after a hearing held under paragraph (2) the Secretary decides not to reverse his decision to deny an application or revoke a license, the Secretary shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding. If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

The legislative history of this provision indicates that Congress intended that the review should be *de novo* rather than restricted to a consideration of the administrative record. *See* H.R.Rep.No.1577, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 4410, 4422–23. Various courts, relying on the legislative history, have taken such an approach. *See Service Arms Co. v. United States*, 463 F.Supp. 21, 23 (W.D.Okl.1978); *Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms*, 448 F.Supp. 409, 411 (M.D.Pa.1977); *Rich v.*

*United States*, 383 F.Supp. 797, 798–99 (W.D.Ohio 1974); *Mayesh v. Schultz*, 58 F.R.D. 537, 538–39 (N.D.Ill.1973); *Weidner v. Kennedy*, 309 F.Supp. 1018, 1019 (C.D. Cal.1970); *cf. McLemore v. United States Treasury Dept.*, 317 F.Supp. 1077, 1078–79 (N.D.Fla.1970). In *Shyda*, the court wrote:

> This matter is before me for consideration de novo. The statute provides for the introduction of evidence beyond that contained in the administrative record:
>
> > "In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding. If the court decides that the [Director] was not authorized to . . . revoke the license, the court shall order the [Director] to take such action as may be necessary to comply with the judgment of the court."

18 U.S.C. § 923(f)(3). As the statutory history of this section indicates, Congress contemplated that a proceeding in the district court upon the petition of the aggrieved licensee would be a "de novo review of . . . [the] revocation . . . ." *See* H.R.Rep.No.1577, 90th Cong. & Ad.News p. 4423. The better reasoned cases agree that the ordinary standard of administrative review does not apply when the Bureau seeks revocation of a license to sell firearms and ammunition. (citations omitted)

*Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, supra*, 448 F.Supp. at 411.

Therefore, based on the foregoing discussion, the Court is of the view that its review in this proceeding is not limited exclusively to a consideration of the administrative record; any additional evidence submitted by either party may be considered.

Under 18 U.S.C. § 923(d)(1)(C), it is provided that an application for a license as a firearms dealer shall be approved if "the applicant has *not willfully* violated any of the provisions of this chapter [Chapter 44, Title 18, U.S.C.] or regulations [27 C.F.R. § 178.1 *et seq.*] issued thereunder." Section 923(g) requires "[e]ach . . . licensed dealer [to] maintain such records of . . . receipt, sale, or other disposition, of firearms . . . and in such form as the Secretary may by regulations prescribe." Based on findings that the plaintiff had willfully violated the recordkeeping requirements of the Act and the regulations promulgated thereunder, the Bureau denied the plaintiff's application for renewal of its firearms license.

In *Lewin v. Blumenthal*, 590 F.2d 268 (8th Cir. 1979), the Eighth Circuit held that plain indifference to the recordkeeping requirements was sufficient to establish a willful violation under 18 U.S.C. § 923(d). In formulating this standard, the court relied chiefly on *Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, supra*, which held:

> In order to prove a violation of 18 U.S.C. § 923(g) and 27 C.F.R. §§ 178.124 & 178.-125 the Bureau must establish that the licensee "willfully" failed to maintain the proper records. Petitioner argues that the Bureau has not proven willfulness, and that therefore summary judgment should not be granted. In a civil context such as this, the definition of "willfully" is dependent upon the specific statutes involved. *See Irey v. Occupational Safety and Health Review Comm'n*, 519 F.2d 1200, 1207 (3d Cir. 1974); *Rich*, 383 F.Supp. [797] at 800. For the violations alleged here, the Bureau must prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements. *See Rich*, 383 F.Supp. 800–01; *McLemore v. United States Treasury Dep't*, 317 F.Supp. 1077, 1079 (N.D.Fla.1970); *Mayesh*, 58 F.R.D. [537] at 540. [*Cf. Rex Wine Corp. v. Dunigan*, 224 F.2d 93, 95 (2d Cir. 1955).] There is no requirement of bad purpose as might be imposed were the Court faced with determining the definition of willfulness in a criminal prosecution. *Cf. Intercounty Construction Co. v. Occupational Safety and Health Review Comm'n*, 522 F.2d 777, 779–80 (4th Cir. 1975).

*Lewin v. Blumenthal, supra,* 590 F.2d at 269, *quoting Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, supra,* 488 F.Supp. at 415.

With the above considerations in mind, the Court will proceed to review the parties' respective motions.

*Preliminary Injunction*

■ Within the Eighth Circuit, an alternative test has been adopted in preliminary injunction cases to determine the propriety of injunctive relief. Under this test, a preliminary injunction should issue

upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Fennell v. Butler,* 570 F.2d 263, 264 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978). *Accord, Dakota Wholesale Liquor v. Minnesota,* 584 F.2d 847 (8th Cir. 1978). Application of either portion of the *Fennell* test to the present case yields the conclusion that the granting of a preliminary injunction would be inappropriate.

■ In this case, the record as was discussed previously by the Court, clearly shows that the plaintiff, by and through its president, Mr. Baudo, failed to comply with the recordkeeping requirements of the Act and the regulations issued thereunder, and that such failure, in light of Mr. Baudo's experience and familiarity with such recordkeeping requirements, constituted willful violations of the Act. From the fact that Mr. Baudo had previously been involved in the firearms business both in Nebraska and Iowa, it could properly be inferred that he was well aware of the requirements. However, such an inference is not required since the evidence demonstrates that Mr. Baudo had actual notice.

At the time of his application for a license for Fin & Feather, Inspector Nelson explained the recordkeeping requirements and the regulations to Mr. Baudo. After the inspection of Fin & Feather, d/b/a Sun Discount, and Fin & Feather, d/b/a Omaha Midwest, in the early part of 1977, Mr. Baudo and his bookkeeper, Ms. Teri Martin, were both advised of the requirements. Mr. Baudo was further advised by letter dated May 16, 1977. Then, at the conference with Mr. Chupp in Chicago, on November 9, 1977, Mr. Baudo was again advised of the recordkeeping requirements. Nevertheless, despite the numerous times he was advised of these requirements, not only did he fail to insure proper maintenance of records by Mr. Shannon at Fin & Feather, d/b/a Sun Discount, but he also failed to maintain them at Fin & Feather, d/b/a Omaha Midwest, as was indicated by the violations found in the 1978 inspections.

At the hearing before this Court, Mr. Baudo, as he did at the administrative hearing in March of 1979, attempted to defend against the willful violations of the plaintiff by placing the blame on Mr. Shannon. However, Mr. Shannon was merely Mr. Baudo's manager at Sun Discount. It was Mr. Baudo's responsibility that the proper records be maintained by Mr. Shannon for Fin & Feather, d/b/a Sun Discount.

In *McLemore v. United States Treasury Dept.,* 317 F.Supp. 1077 (N.D.Fla.1970), the petitioner was charged with willfully failing to maintain proper records as required under the Act. The petitioner attempted to defend against the violations by contending that during the period of time in which the investigations of his premises were conducted, he was required to be away from the business because of illness and at such times, it was his employees who were left to keep the records. The court rejected this defense, stating that:

[t]he mere fact that a part of the above mentioned violations are attributable to the agents or employees of petitioner in nowise mitigates the conduct of petitioner, and under the respondeat-superior doctrine, petitioner can be held blameworthy for their acts.

*McLemore v. United States Treasury Dept.,* supra, 317 F.Supp. at 1079.

■ Thus, it is clear that Mr. Baudo's attempt to defend against the plaintiff's violations by pointing to some allegedly improper conduct by Mr. Shannon, an employee of Mr. Baudo at Sun Discount, is unavailing. Under the doctrine of respondeat superior, the plaintiff and Mr. Baudo are responsible for the actions of their employees. *See also United Cigar Whelan Corp. v. United States*, 113 F.2d 340, 346 (9th Cir. 1940); *United States v. Gibson Prods. Co., Inc.*, 426 F.Supp. 768, 770 (S.D.Tex.1976). Moreover, Mr. Baudo's statements with respect to Mr. Shannon relate solely to the violations found at Sun Discount. In no way do they cover the violations found at Omaha Midwest.

■ The plaintiff also challenges the pertinent statutes and regulations on constitutional grounds. The Court finds these challenges without merit. The statutes and regulations are neither too burdensome, *United States v. Miller*, 426 F.2d 794, 795 (4th Cir. 1970), nor unconstitutionally vague. *United States v. Decker*, 446 F.2d 164, 166 (8th Cir. 1971).

■ Accordingly, the Court concludes that the plaintiff has shown neither a substantial probability that it will succeed on the merits nor sufficiently serious questions going to the merits to make them a fair ground for litigation. While this conclusion renders it unnecessary to address the issue of harm, *see Woida v. United States*, 446 F.Supp. 1377, 1389 (D.Minn.1978), nevertheless, the Court is also of the opinion that the plaintiff has failed to demonstrate that the balance of hardships tip decidedly in its favor.

Improper recordkeeping is a serious violation. When the Act was enacted, Congress "was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974). Congress determined that the ready availability of firearms contributed significantly to the increasing rate of crime and lawlessness throughout the nation. S.Rep.No.1097,

90th Cong., 2d Sess. 108, *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2114. Therefore, the principal purpose of the federal gun control legislation was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency." S.Rep.No.1501, 90th Cong. 2d Sess. 22 (1968). To accomplish this purpose, Congress imposed strict recordkeeping requirements on federally licensed firearms dealers. Information gleaned from the records kept by firearms dealers guarantees the Act's effectiveness in keeping firearms from those individuals in whose hands such weapons would be dangerous to society. *See Huddleston v. United States*, 415 U.S. at 824–25, 94 S.Ct. 1262. Thus, a firearms dealer, by failing to keep the required records, seriously undermines the effectiveness and purpose of the Act and ultimately endangers society.

In light of the actions taken by the plaintiff, it is clear that such is the case herein. Indeed, Mr. James A. Duff, a special agent with the Bureau, testified that one of the plaintiff's missing firearms had been used in an armed robbery. Therefore, the Court is of the view that the plaintiff's contentions regarding the hardships which would be visited upon its business should its motion be denied, pale in comparison to the societal interests involved and the harmful impact which plaintiff's actions have thereon.

Consequently, in light of the foregoing discussion, the Court concludes that the plaintiff's motion for a preliminary injunction should be denied.

### Summary Judgment

While the Court has concluded that plaintiff's motion for a preliminary injunction should be denied, this is not necessarily determinative of the defendants' motion for summary judgment. A separate consideration of the defendants' motion must be undertaken.

■ As was noted previously, in this proceeding this Court is not restricted to a consideration of the administrative record

in making its determination. Instead, the review of the Bureau's denial of plaintiff's renewal application is *de novo*. However, this does not preclude the Court from granting a motion for summary judgment in these types of cases.

. . . The legislative history of the statute, 3 U.S.Code Cong. and Adm.News, pp. 4410, 4422–4423 (1968), does clearly show contemplation of broad judicial review of any denial or revocation of a license under the chapter. Nevertheless, neither such history nor the language of the statute purports to preclude application of Rule 56. . . .

*Mayesh v. Schultz, supra,* 58 F.R.D. at 539.

Therefore, summary judgment is available under Section 923(f)(3) and may be appropriate "if material facts developed at the administrative hearing, which the court also concludes justify nonrenewal, are not refuted or challenged by proper counter-affidavits filed pursuant to Rule 56." *Mayesh v. Schultz, supra; see, e. g., Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, supra.*

In this case, the evidence clearly shows that Mr. Baudo, the plaintiff's president, failed to maintain proper records even after the defendants, on numerous occasions, had pointed out the deficiencies in plaintiff's recordkeeping, the applicable law and regulations and the proper recordkeeping needed to correct such deficiencies. To the Court, this shows that plaintiff, at the least, was plainly indifferent to the recordkeeping requirements of the Act. As the Court noted previously, under the Eighth Circuit's holding in *Lewin v. Blumenthal, supra,* this is sufficient to establish a willful violation justifying denial of the renewal application.

The lone affidavit offered by the plaintiff to refute the facts developed at the administrative hearing is the affidavit of Mr. Baudo attached to plaintiff's motion for a temporary restraining order [Filing # 8]. Essentially, this affidavit and an attachment thereto attempt to challenge the willfulness of plaintiff's violations by pointing the finger at some allegedly improper actions taken by Mr. Shannon, an employee at Sun Discount. However, under the doctrine of respondeat superior, the plaintiff is clearly responsible for the actions of Mr. Shannon and thus can be held blameworthy for his acts. *See McLemore v. United States Treasury Dept., supra; see also United Cigar Whelan Stores Corp. v. United States, supra; United States v. Gibson Prods. Co., Inc., supra.* Moreover, even assuming that the doctrine is inapplicable, plaintiff's contentions regarding Mr. Shannon would only cover the violations at Sun Discount. The overwhelming evidence of willful violations at Omaha Midwest remain, and nowhere has plaintiff refuted those violations.

■ However, plaintiff's counsel contends that summary judgment is inappropriate in that he intends to offer additional evidence bearing on the issue of willfulness [Plaintiff's Supplemental Brief at 9–10]. This Court does not agree. An assertion by counsel that he is prepared to offer additional factual evidence does not create a disputed issue of material fact precluding the granting of summary judgment. *Mayesh v. Schultz, supra,* 58 F.R.D. at 539. As the Court in *Mayesh* stated:

It may be admitted that de novo trial is authorized under the statute, but no useful purpose is served by a trial unless there is at least one genuine issue of material fact to be tried. De novo consideration is provided when the court tests anew the justification for license denial. No one is served by trial of immaterial issues or pretense that issues exist which do not.

*Mayesh v. Schultz, supra,* 58 F.R.D. at 539.

In short, the record makes clear that the Bureau has proven that extremely serious violations of recordkeeping requirements occurred and the Court is convinced that there can be no serious dispute as to the willfulness of these violations. Consequently, there being no genuine issue of material fact requiring trial, the defendant is entitled to summary judgment.