**AL'S LOAN OFFICE, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, Respondent.**

**Misc. No. 89–71493.**

United States District Court,
E.D. Michigan, S.D.

May 7, 1990.

David A. Gordon, Southfield, Mich., for petitioner.

William L. Woodard, Asst. U.S. Atty., Detroit, Mich., for respondent.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

## INTRODUCTION

This matter is before the Court on motion of respondent, United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF) for summary judgment. Petitioner, Al's Loan Office, Inc., has responded. Having fully reviewed all relevant matter, the Court will address respondent's motion without entertaining oral argument.

## BACKGROUND

Al's Loan Office, Inc., petitioner, was a federal firearms licensee and held a federal license to deal and pawn firearms. Its license was revoked effective September 18, 1989. ATF revoked petitioner's federal firearms license for failure to follow certain record keeping procedures pursuant to Title 18, United States Code, Section 923(g), and Title 27, Code of Federal Regulations, Part 178.

Over a period of years, petitioner repeatedly violated these record keeping requirements. Inspection reports for the years 1976, 1978, 1979, 1980, 1981, 1982, 1983, 1985, 1987 and 1988 indicate that petitioner has, among other violations, repeatedly failed to properly maintain a separate bound book in which all firearms acquisitions or dispositions are entered in a timely manner in violation of 27 C.F.R. § 178.125(e). In addition, petitioner repeatedly failed to ensure that ATF Form 4473 was properly completed when a firearm was sold or redeemed to a customer in violation of 27 C.F.R. § 178.124(c). Further, petitioner made numerous prohibited sales of firearms to individuals disqualified by law from receiving firearms in violation of 27 C.F.R. §§ 178.124(c), 178.32 and 178.99. After each inspection, the inspector informed petitioner's employees of its violations and also instructed the dealer as to the proper record keeping procedures.

In 1982, the Regional Director of ATF sent petitioner an Admonitory Letter, which noted the licensee's repeated violations and stated that "your license is contingent on your compliance with law and regulations and that continued violations may lead to revocation of your license." Even after the issuance of the Admonitory Letter, inspections in 1983, 1985, 1987 and 1988 indicated that petitioner repeatedly violated the federal firearms laws and regulations despite being continually instructed on the proper way to keep its records.

*See*, Hearing Officer's Report at 3, 4 and Exhibits 11, 12, 14 and 15. Finally, on March 31, 1989, petitioner, after being given numerous opportunities to reform, was notified by ATF that its license would be revoked.

Pursuant to 18 U.S.C. § 923(f), petitioner requested a hearing. A hearing was granted and on May 10, 1989, petitioner was given the opportunity to explain why its license should not be revoked. Petitioner's attorney stipulated to all past violations, but requested that its license not be revoked since, in his view, petitioner had straightened out its record keeping problems. Hearing Officer's Report at 1, 8, 23 and 25. To prove that the record keeping problems were corrected, petitioner brought to the hearing a portion of its records for inspection. At a recess, the books were examined by ATF inspectors and within minutes, the inspectors noted violations of the law and regulations as to how records were kept. Hearing Officer's Report at 20–22. Specifically, the acquisition and disposition records and ATF Forms 4473 were still not accurate and correct.

After the hearing, the Hearing Officer recommended revocation of petitioner's license. The Hearing Officer concluded: "The licensee was plainly indifferent to the regulatory requirement for conducting his firearms license operations and therefore willfully violated the regulations. I recommend the license be revoked." Hearing Officer's Report at 25.

The Regional Director concurred with the Hearing Officer's recommendation, and pursuant to the authority of 18 U.S.C. § 923(e), a final notice of revocation was issued. The revocation became effective on September 18, 1989. On or about September 19, 1989, petitioner filed a petition for *de novo* review before this Court pursuant to 18 U.S.C. § 923(f)(3). Petitioner also asked the Regional Director to stay the effective date of revocation pending review of its petition in district court. The Regional Director declined to postpone the effective date of revocation. Consequently, in conjunction with its petition for review, petitioner sought an order from this Court which would have stayed the effective date of revocation until a decision was reached on its petition. After hearing oral argument on September 26, 1989, this Court denied petitioner's motion for a restraining order on the ground that it had failed to demonstrate that it would likely succeed on the merits of the case.

The only matter left for this Court to rule on is petitioner's petition for review of the Order of the Secretary of Treasury revoking petitioner's firearms license. In essence, this Court must decide whether revocation is proper.

## LAW

The law regarding the revocation of federal firearms licenses is stated in 18 U.S.C. § 923(e) as follows:

> The Secretary may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Secretary under this chapter.

In addition, if the Secretary goes forward and revokes the license, then the former licensee can petition for judicial review of the Secretary's revocation to the Federal District Court pursuant to 18 U.S.C. § 923(f)(3), which provides as follows:

> If after a hearing held under paragraph (2) the Secretary decides not to reverse his decision to deny an application or revoke a license, the Secretary shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceedings whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the

Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

The language of § 923(f)(3) makes it clear that in its *de novo* review of the revocation, the district court "may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2) [of Section 923(f)]." Furthermore, it is clear that absent genuine issues of material fact, a court may properly grant summary judgment without conducting an evidentiary hearing. In *Cucchiara v. Secretary of the Treasury*, 652 F.2d 28, 30, n. 1 (9th Cir.1981), the Ninth Circuit, citing concerns of judicial economy and an aversion to repetitive hearings, approved the use of summary judgment in *de novo* reviews on the basis of the administrative record when no substantial reason to receive additional evidence is present "and the 'material facts developed at the administrative hearing, which the court also concludes justify nonrenewal' are not substantially drawn into question by the party petitioning for review." *Id.* at 30. *See also Mayesh v. Schultz*, 58 F.R.D. 537 (D.Ill.1973); *Fin & Feather Sport Shop, Inc. v. United States Treasury Dept.*, 481 F.Supp. 800 (D.Neb.1979); *Thrall v. Wolfe*, 352 F.Supp. 1074 (E.D. Wisc.1972). *But see Weidner v. Kennedy*, 309 F.Supp. 1018 (D.Cal.1970) (summary judgment not appropriate in § 923(f) proceedings where factual matters are in issue and additional evidence is sought to be introduced in court).

## SUMMARY JUDGMENT

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.*, 806 F.2d 673, 675 (6th Cir.1986). Where the nonmoving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## OPINION

In the case at bar, petitioner does not dispute the fact that it has repeatedly and

continuously violated the record keeping requirements of the federal firearms laws from the years 1976 through 1988. Furthermore, petitioner does not dispute the fact that after every inspection during this period, the inspectors as a matter of routine procedure, sat down with the petitioner's employees and explained the violations that were made and the proper way to correct the violations. Finally, petitioner does not dispute the fact that since it is a corporation, it must be held accountable for the actions of its employees. Hearing Officer's Report at 11 and 14.

The basis for the petition for review, and petitioner's argument in opposition to respondent's motion for summary judgment, is that the Hearing Officer failed to give weight to the improvement in record keeping procedures and direction of business practices. Petitioner argues that because of these improvements there is a question of fact as to the willfulness of the violations. For example, petitioner points out that from the time the violations started and up until May of 1988, Bert Swartz was the president, chief executive officer and person in charge of running Al's Loans. In May of 1988, Douglas Swartz, vice-president of Al's Loans signed an employment contract to become general manager and to be in charge of the day-to-day affairs of running said corporation and business. Pursuant to Douglas Swartz taking over Al's Loans, he purchased a computer system and software that helped him simplify and correct previous mistakes and procedures. To correct the mistakes being commonly made by employees, he fired any and all employees who were not diligent in record keeping procedures relating to gun laws.

In addition, petitioner points out that Inspector Joe Ejbeh of ATF testified "... I am quite familiar with the regulatory requirements and records of Special Agent Miller and Special Agent Jewell and myself, we have reviewed the records and first of all I'd like to say it is a good will and excellent attempt by the licensee of trying to change his system as it exists right now with the computer system." Inspector Ejbeh went on further to state:

"So there are some problems, but the records as presented today do show a decent and sincere attempt by the licensee to try and change his record keeping system to meet the regulatory requirements."

Petitioner argues that the Hearing Officer, Mr. Leo B. Reed, declined to give the credit due to Douglas Swartz for trying to reverse the trend of the gun portion of petitioner's business. In sum, petitioner argues there are several disputed facts as presented to the Hearing Officers, the most important being improvement, or lack of improvement, which directly relates to whether the violations were willful. Petitioner contends that the ATF took formal action in moving to strip it of its federal firearms license after Douglas Swartz took over running the business. Petitioner alleges that ATF at that time knew full well that petitioner had implemented a new computer system at great expense towards the end of 1988 to end all the problems that the business was having. Therefore, petitioner contends that it should be given a chance to fully implement the new computer system to once and for all end any and all problems with ATF.

The problem with petitioner's argument is that it attempts to focus the Court on a period of time in 1988. However, as clearly made out by the facts of this case, petitioner violated the record keeping requirements of the Gun Control Act over a 12–year period. Courts uniformly hold that where, as here, a licensee understood his legal obligations for record keeping, but repeatedly failed to abide by these obligations, his license can be properly denied or revoked pursuant to 18 U.S.C. § 923(e) on the ground that he willfully violated the record keeping requirements of the Gun Control Act. *Cucchiara v. Secretary of the Treasury*, 652 F.2d 28, 30 (9th Cir. 1981). There is no question of fact that petitioner's failure to correct its record keeping was willful and plainly indifferent to the record keeping requirements. See *Finn & Feather Sport Shop, Inc., v. United States Treasury Dept.*, 481 F.Supp. 800 (D.Neb.1979).

Having carefully reviewed the entire record, and not giving any presumption of correctness or other advantage to the administrative decision, this Court makes an independent determination that the Secretary's decision in revoking petitioner's federal firearms license was correct. Selling and pawning firearms is a privilege granted by the federal government and is not a right of any person. Petitioner in this case has displayed flagrant, willful indifference to the record keeping requirements over the past 12 years and cannot now argue that its most recent attempts to cure its record keeping problems are grounds not to revoke its license. Furthermore, the Court notes that we live in a very violent society where careless and violent individuals use guns to kill and maim innocent people. Those who distribute guns must be held accountable as they are the first step in preventing lawless individuals from obtaining guns.

### CONCLUSION

Accordingly, the Court hereby GRANTS respondent's motion for summary judgment and DISMISSES Al's Loans' petition, with prejudice. The Secretary's decision to revoke petitioner's license to sell and pawn firearms is AFFIRMED.

IT IS SO ORDERED.