**Larry R. CISEWSKI, d/b/a
Larry's Guns, Plaintiff,**

v.

**DEPARTMENT OF THE TREASURY,
BUREAU OF ALCOHOL, TOBACCO
& FIREARMS, Defendant.**

No. 90–C–804.

United States District Court,
E.D. Wisconsin.

Aug. 2, 1991.

Marc Polland, Polland, Kohn & Knutson, Milwaukee, Wis., for plaintiff.

Nathan Fishbach, Deputy U.S. Atty., Chief, Civ.Div., Milwaukee, Wis., Larry K. Peterson, Sr. Atty., Office of Regional Counsel, Bureau of Alcohol, Tobacco and Firearms, Chicago, Ill., for defendant.

### Decision and Order

AARON E. GOODSTEIN, United States Magistrate Judge.

Larry Cisewski, doing business as Larry's Guns, was a licensed gun dealer until June 21, 1990. On that day, respondent, Bureau of Alcohol, Tobacco and Firearms (hereinafter "ATF" or "respondent") issued a Final Notice of Revocation, revoking Larry Cisewski's license to sell firearms. On August 14, 1990, Cisewski filed a petition for judicial review of the revocation. The case was transferred to this court, upon consent of the parties, on October 26, 1990. A trial to the court commenced on December 19, 1990. Both parties filed post-trial briefs, and the matter is now ready for resolution. This decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

### Brief History

The petitioner initially came into contact with ATF inspectors on September 8, 1986 when ATF Inspector Jerome Neve met with the petitioner to conduct a "forward trace." "Traces" are conducted either to discover the owner of a particular handgun, such as a weapon recovered from a crime scene (backward trace), or as a means of monitoring record-keeping, wherein the ultimate disposition of a firearm is traced starting with the manufacturer of the weapon (forward trace). Neve was able to locate only four of the fourteen firearms requested in the trace. Cisewski informed Neve at that time that his records had been destroyed, although they were later found. Neve testified that at his meeting with the petitioner, he furnished Cisewski with copies of the federal firearms regulations, and that as a matter of practice, he would have discussed the various regulations.

Cisewski next came into contact with ATF when a State of Wisconsin undercover officer and ATF Special Agent Michael Quick visited the petitioner in December of 1988. This visit was subsequent to a gun show in Madison where Cisewski sold handguns to two state undercover officers in violation of Wisconsin's 48 hour law, Wis. Stat § 175.35. Agent Quick confiscated the petitioner's records during the visit. Subsequently, in February, 1989 ATF Inspector Mary Jo Holpit visited Cisewski, and informed him of the recordkeeping and other errors she had found upon inspection of his confiscated records.

In August, 1989 a decision was made by William Earle, then regional director of ATF for the midwest region, to revoke Cisewski's license, and Cisewski was served with a notice of revocation. An administrative hearing was held on November 1, 1989, and on June 21, 1990, Regional Director Earle issued a Final Notice of Revocation. The petitioner then filed this action, and a three day trial to the court was conducted.

### Statute and Standard of Review

18 U.S.C. § 923 provides in part:

(e) The Secretary may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Secretary under this chapter.... The Secretary's action under this subsection may be reviewed only as provided in subsection (f) of this section.

(f)(3) If after a hearing held under paragraph (2) the Secretary decides not to reverse his decision to deny an application or revoke a license, the Secretary shall give notice of his decision to the

aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

Pursuant to 18 U.S.C. § 923(e), the Secretary of ATF may, after notice and opportunity for hearing, revoke any license issued under § 923 if the holder of the license willfully violated any provision of Title 18, Chapter 44–Firearms, 18 U.S.C. §§ 921 *et seq.*, or any rule or regulation prescribed by the Secretary under that chapter. The regulations, promulgated by the Secretary under the authority of 18 U.S.C. § 926, can be found in Title 27, Code of Federal Regulations, Parts 178, 179 and 47. "Willfully," as used in the statute, does not require a bad purpose. *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir.1980).

If, as here, the Secretary revokes a license, the revoked licensee can petition for judicial review of the Secretary's revocation to the federal district court pursuant to 18 U.S.C. § 923(f)(3). Section 923(f)(3) provides that the court shall conduct a "de novo judicial review," and may consider any evidence submitted by the parties to the proceedings whether or not such evidence was considered at the petitioner's hearing before the Secretary. The section further provides that if it is decided that the Secretary was "not authorized" to revoke the license, the court can, as Cisewski requests, order the Secretary to reinstate the license. 18 U.S.C. § 923(f)(3); *See also, Al's Loan Office, Inc. v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco and Firearms*, 738 F.Supp. 221 (E.D.Mich. 1990).

■ The question of the appropriate scope of review subsequent to the 1984 amendments to § 923(f), which expressly provided for the consideration of evidence not presented to the Secretary, appears to be a question of first impression. While the language of the statute appears explicit, respondent, ATF, urged the court to consider evidence which came into existence *after* the proceeding before the Secretary. The court noted that the de novo nature of the hearing allows the court to consider any evidence, and the statute does not give any presumption of correctness to the agency decision or its findings of fact. *Stein's,* 649 F.2d at 466; *See also,* Hardy, *The Firearms Owners' Protection Act: a Historical Perspective,* 17 Cumb.L.Rev. 585, n. 419–423 (1987). Nevertheless, the court limited the admission of evidence which came into existence after the hearing before the Secretary to evidence introduced for purposes of Rule 404(b), Fed.R.Evid. since the court's review is limited to determining whether the decision made by the Secretary was authorized.

### Violations

Petitioner, as a licensed firearm dealer, is obliged to record the disposition of every firearm on ATF Form 4473, unless the firearm goes to another licensee. 27 C.F.R. § 178.124(a). The receipt and disposition of every firearm possessed by the licensee is to be recorded in a permanent "bound record book". 27 C.F.R. § 178.125(e). The bound record book is maintained to allow law enforcement authorities to "trace" the owner of a firearm which may have been used in the commission of a crime. Also for law enforcement purposes, multiple weapons sales occurring within five consecutive business days are to be reported on ATF Form 3310.4, and forwarded to ATF by the close of business on the day the second gun was sold. 27 C.F.R. § 178.-126a. In addition, it is unlawful for a licensed dealer to knowingly make any false entry, or fail to make a required entry in a record which is maintained pursuant to

18 U.S.C. § 923 or regulations promulgated under the authority of § 923. 18 U.S.C. § 922(m).

A licensed dealer may only sell firearms and ammunition to individuals who are not prohibited from the purchase of firearms under 27 C.F.R. § 178.99(c) and 18 U.S.C. § 922(d). The individual must be 18 years of age to purchase a rifle or shotgun, and 21 years of age to purchase any other firearm. 18 U.S.C. § 922(b)(1); 27 C.F.R § 178.99(b).

Any licensee is obliged to abide by State and local laws as well. 27 C.F.R. § 178.58 and § 178.99; 18 U.S.C. § 927. Under the laws of Wisconsin, a firearm's purchaser must wait 48 hours from the time of purchase before he or she may receive the weapon. Wis.Stat. § 175.35 (1989).

█ The Secretary presented considerable evidence of violations, which generally fall into five categories: sales of firearms to under-age individuals; failure to report and improperly recorded multiple sales of firearms; improper interstate transactions; violations of Wisconsin's 48 hour law; and false entries into the "bound record book" to account for missing firearms. The petitioner disputes the significance of the 48 hour rule violations and the alleged false entries, and asserts that the other violations lacked the requisite willfulness.

A distillation of the testimony establishes the following violations:

—two sales of weapons to underage individuals, one personally by the petitioner, and one by an employee;

—thirty two multiple gun sales in five consecutive business days or less, without the completion of an ATF Form 3310.4 (Report of Multiple Sales);

—one or more ATF Forms 4473 with multiple weapons sales which were altered to reflect sales dates separated by more than five consecutive business days, when in fact the sales occurred on the same day;

—False entries in the "bound record book" reflecting sales or transfers to a Minnesota gun dealer, when in fact the actual transfers were sales to Minnesota residents at a Wisconsin gun show, contrary to 18 U.S.C. § 922(b)(3), and the book entry was made to hide the impropriety of the sale;

—False entries in the "bound record book" reflecting sales or transfers to petitioner from a Minnesota gun dealer, when in fact the actual transfers were made by the Minnesota dealer to Wisconsin residents, failing to comply with the procedures articulated in 27 C.F.R. § 178.96, where the book entry was made to hide the impropriety of the sale at the request of the Minnesota dealer;

—False entries on ATF Forms 4473 and in petitioner's bound record book indicating an incorrect receipt or purchase date to hide sales in violation of Wis.Stat. § 175.35 (1989), which requires 48 hours between purchase and delivery of a handgun;

—False entries into the bound record book showing the disposition of firearms to the petitioner himself, or to the petitioner's wife, when in fact, the weapons were inexplicably missing or had been transferred to out of state residents.

There is no question that the false entries into records and altered documents were willful violations. The plaintiff, however, attempts to characterize these violations as *de minimus*, and, in any event, corrected upon notification, never to be repeated. The record shows that although the petitioner did make extensive corrections in his practices, he did repeat some of these violations subsequent to Inspector Holpit's visit and admonition that corrections were necessary:

An example of repeat violations after being warned involves the preparation of form 4473.

—Form 4473 states "the person making the actual firearms sale must complete items 18 through 20." Item 18 requires the transferor's signature. Prior to Inspector Holpit's visit on February 9, 1989, Cisewski and his employees routinely used a preprinted form 4473 bearing Cisewski's signature. The petitioner testified that Inspector Holpit instructed him to discard the preprinted forms 4473, and obtain new ones without a preprinted signature. The petitioner continued to use forms bearing a

preprinted signature in at least forty nine sales occurring over a period of several months subsequent to Inspector Holpit's visit.

The petitioner, while initially testifying that Holpit advised him on proper preparation of this form, later changed his testimony, stating that Holpit never gave him such instructions. The Court finds Cisewski's testimony self-serving and not credible on this point. Cisewski as part of his case admitted being instructed not to use preprinted forms; he reaffirmed this on cross-examination and on cross-examination during the rebuttal portion of the case. It was only on redirect examination that he first changed his testimony.

Petitioner's testimony regarding continuing violations of the Wisconsin 48 hour law is similarly unconvincing. In November, 1988 Cisewski made sales of handguns to State of Wisconsin undercover officers in violation of Wisconsin's 48 hour law, Wis. Stat. § 175.35. When confronted by these officers, along with ATF Agent Michael Quick, the petitioner falsely stated in a signed statement that the guns had been preordered. The petitioner testified that subsequent to Inspector Holpit's visit he complied with the 48 hour law. However evidence at trial established that Cisewski repeated violations of the 48 hour law subsequent to February 9, 1989. Cisewski unequivocally stated that he did not violate this rule after the Madison incident. However, an employee, Richard Woodruff, testified to the practice of "backdating" forms subsequent to the visit by Holpit.

In addition, subsequent to the petitioners filing of this federal court action, Cisewski arranged to execute sales of firearms through another licensed dealer, James Griffin. Pursuant to this arrangement, customers would negotiate the purchase of firearms in Cisewski's store, pay Cisewski, and in most instances, Griffin would deliver the guns to the individuals. In two instances, Cisewski himself delivered the guns to the purchaser's premises, thereby disassociating Griffin from the sale entirely. Since all of these transactions took place at a location other than Griffin's

premises or at a gun show, they were improper transactions. 27 C.F.R §§ 178.50 and 178.100. More significantly, however, these transactions are further evidence that Cisewski's earlier violations were more than mistakes, but rather intentional efforts to circumvent rules and regulations.

While these repeat episodes could be characterized as minor or insignificant, these repetitions, nevertheless, undermine the petitioner's claim to have corrected his ways. In addition, the petitioner has admitted and demonstrated that he conformed his practices to his perception of the practices of other dealers, rather than to his understanding of the law. The variety and nature of the violations reveal the petitioner to be either a very cunning and manipulative individual, or incredibly obtuse about the rules and regulations governing gun dealers. At either end of the spectrum, he should not be dealing in firearms.

"Courts uniformly hold that where ... a licensee understood his legal obligations for record keeping, but repeatedly failed to abide by these obligations, his license can properly be denied or revoked pursuant to 18 U.S.C. § 923(e) on the ground that he willfully violated the record keeping requirements of the Gun Control Act." *Al's Loan Office v. United States Department of Treasury,* 738 F.Supp. 221, 224 (E.D.Mich.1990).

Petitioner's claim is that the ATF singled him out for harsh treatment and never gave him a second chance. Petitioner contends that since there is no clear evidence of his unwillingness to change, the regional director abused his discretion in sending a notice of revocation instead of a letter of admonition. The testimony fails to support petitioner's position. The fact is that Inspector Holpit instructed the petitioner as to the proper corrective actions to take. Even if Inspector Holpit believed at the time she instructed the petitioner as to the proper procedures that Cisewski's license should be revoked, her instructions to the petitioner would still be proper and necessary, both so he could correct some or all of the existing improprieties, and so he

would comply with record-keeping procedures in the future. Moreover, the petitioner failed his second chance after the visit by Inspector Neve, and he failed it after the visit by Inspector Holpit. Most significantly, however, Congress has not provided the agency with a host of options; this demonstrates a chary attitude in the regulation of firearms and in providing second chances. The ATF is essentially given only two tools of enforcement, the admonitory letter and revocation. There are no fines, no probationary periods, no suspensions.

The petitioner has shown reckless disregard for regulations. Amongst the numerous other violations, Cisewski made more than 47 false entries into his bound record book, showing himself or his wife as the recipients of firearms which were missing without explanation. The petitioner asserts that there was nothing improper in handling missing firearms in this fashion because he or his wife were responsible to account for the guns, missing or not. Petitioner is correct regarding his accountability, but falsifying or "covering up" the transactional chain of specific firearms is not acting in a responsible manner. The court imagines that the petitioner does not mean to make himself responsible for a crime committed with one of these "missing," untraceable guns. Furthermore, this practice is contrary to the reporting procedures mandated by 27 C.F.R. § 179.141 concerning lost or stolen firearms. *See also (Your Guide To) Federal Firearms Regulations 1988–89* ATF Publication 5300.4 (6–88), ¶¶ (F15), (F16) at 86.

Congress, by passing both the Gun Control Act and the Firearms Owners Protection Act has voiced its intent to protect the legitimate interests of firearms owners while preserving the necessary foundation for legitimate law enforcement efforts. *National Rifle Association v. Brady,* 914 F.2d 475, 477 (4th Cir.1990). While the petitioner undoubtedly feels the Secretary's decision to revoke his license was excessive or unfair, in light of the petitioner's violations, the decision was authorized. For all of the foregoing reasons, the court orders that judgment be entered in favor of the respondent, Department of the Treasury, Bureau of Alcohol Tobacco and Firearms, dismissing, with prejudice, Larry Cisewski's petition for the reinstatement of his license to deal firearms. No costs or fees shall be awarded.

SO ORDERED.