File Name: 07a0365n.06
Filed: May 29, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-4299

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

THOMAS L. PROCACCIO, d/b/a PRO GUN &
SPORTS SUPPLY,

      Petitioner-Appellant,

v.

MARCIA LAMBERT, Director, Industry
Operations, Columbus Division, Bureau of
Alcohol, Tobacco, Firearms, and Explosives,

      Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:      MARTIN, BATCHELDER, and CLAY, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge.  Petitioner Thomas Procaccio appeals from the district court's grant of summary judgment in favor of the Columbus Division of the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  The ATF revoked his license to sell firearms after issuing him numerous citations for record-keeping violations at his gun and sports supply store.  *See* 18 U.S.C. § 923(e).  For the reasons discussed below, we now **AFFIRM**.

I

      The facts of the case are quite straightforward, and were adequately set forth by the district court in its opinion and order of July 25, 2006:

In February 1986, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") issued Petitioner Thomas Procaccio a license to sell firearms. Since then, the Petitioner has operated Pro Gun and Sports Supply ("Pro Gun") in Cuyahoga Falls, Ohio. Since issuing the license, ATF agents have inspected Pro Gun four times to ensure compliance with ATF procedures. At each inspection, the agents cited the Petitioner for numerous record-keeping violations.[1] After each inspection, the agents issued a report to the Petitioner detailing the citations and gave Petitioner Procaccio an opportunity to discuss the problems with the investigating agents.

In May 2004, the Petitioner applied to renew his firearm dealer license. On May 22, 2004, ATF notified the Petitioner that his application was on hold during the pendency of assault charges then pending against him in state court in Cuyahoga Falls. Procaccio was later acquitted of those charges, and on June 7, 2004, counsel for the Petitioner sent ATF a copy of the Petitioner's acquittal record in that case. Nevertheless, in late 2004 or early 2005, ATF notified the Petitioner that it intended to revoke his sales license for wilfully violating ATF's record-keeping regulations.

D. Ct. Op. at 1-2 (internal record citations omitted).

Procaccio sought review of the ATF's intention to revoke his license. On March 31, 2005, a hearing was held at the ATF Columbus Field Division. On June 13, the ATF issued a report finding that Procaccio had "willfully violated" provisions of the Gun Control Act of 1968 ("the Act"), 18 U.S.C. § 921 *et seq*. Joint App'x at 207-16. Pursuant to these findings, the ATF issued a final notice of revocation. *Id*. at 220. On September 30, Procaccio filed a petition seeking de novo review of the ATF's decision to revoke his sales license, as is his right under 18 U.S.C. § 923(f)(3). The ATF responded with a motion for summary judgment. On July 25, 2006, the district court

---

[1]ATF conducted inspections in March 1993, September 1994, June-July 2000, and March 2003. Petitioner was cited for incomplete Forms 4473 at each inspection. Additionally, the inspectors found that the Petitioner's log book was incomplete on three occasions, that he was not filling out Forms 3310.4 as required on two occasions, and that he was failing to provide required information to purchasers on one occasion. Form 4473 tracks sales and transfers of firearms, and Form 3310.4 records multiple sales to the same individual within a short time period. These forms and disclosures are required by ATF regulation. *See generally* 27 C.F.R. §§ 478.100-03, 478.121-26 (2006).

granted the ATF's motion. Procaccio now appeals from this decision, articulating the following two issues for review: (1) whether, when interpreting the Act, the mens rea of "willfulness" should be defined as in *Bryan v. United States*, 524 U.S. 184 (1998) or as in *Appalachian Resources Development Corp. v. McCabe*, 387 F.3d 461 (6th Cir. 2004); and (2) whether, based on the answer to the first question, Procaccio can be said to have "willfully violated" the Act.

II

This Court reviews a district court's grant of summary judgment de novo, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)).

The district court's review of an adverse determination by the ATF is also "de novo," but it is a somewhat curious form of de novo review. Title 18 U.S.C. § 923(f)(3) states as follows:

> The aggrieved party may . . . file a petition with the United States district court . . . for a de novo judicial review of such denial or revocation. . . . [T]he court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing . . . . If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

The district court noted the seeming uncertainty of this section, because it expressly "calls for 'de novo judicial review,' yet limits the Court to deciding only whether the Attorney General's decision 'was not authorized.'" D. Ct. Op. at 4. Although there was some dispute during the district court proceedings as to "how this unique form of de novo review should operate," *id*. at 3, Procaccio does

not in the present appeal challenge the district court's treatment of the issue. We therefore leave for a later date any examination of the subtleties presented by § 923(f)(3)'s standard of review.

**A**

Title 18 U.S.C. § 923(e) provides in pertinent part: "The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has ***willfully violated*** any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter. . . ." (Emphasis added.) Procaccio concedes that he was in technical violation of several regulations, specifically those passed pursuant to § 923(g)(1)(A) of the Act, which states that "[e]ach . . . licensed dealer shall maintain such records of . . . shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." Procaccio claims, however, that he did not "willfully violate" any provisions of the Act, based on the Supreme Court's definition of the term "willful" in *Bryan v. United States*, 524 U.S. 184 (1998). Procaccio focuses on the language used by the Court in footnote 13 of *Bryan*, a criminal case in which the Court was asked to plumb the meaning of "willfully" as it appears in another, related part of the Act, § 924(a)(1)(D). The *Bryan* footnote catalogues cases, arising in a variety of contexts, in which various courts and commentators equate a willful act to one "undertaken with a bad purpose." *Id*. at 191 (internal quotation marks omitted). Procaccio now reasons that because he did not act with a "bad purpose" in violating the Act's regulations, his license was improperly revoked.

Procaccio's argument suffers from an overly narrow reading of *Bryan* and a seeming disregard of our own precedent interpreting that opinion. *See Appalachian Resources Development Corp. v. McCabe*, 387 F.3d 461 (6th Cir. 2004). In *Appalachian Resources*, the appellant had its federal firearms license revoked and pressed a virtually identical argument to the one Procaccio brings now. The appellant's license was revoked because it had sold a handgun to an individual "who the licensee knows or has reasonable cause to believe is less than twenty-one years of age," in violation of 18 U.S.C. § 922(b)(1). *Appalachian Resources*, 387 F.3d at 463. On appeal, the appellant argued that it "did not 'willfully' violate the Act because the sale was not done 'with the bad purpose to disobey or disregard the law.'" *Id*. at 464 (citing *Bryan*, 524 U.S. at 190). We rejected the appellant's argument, noting that while *Bryan* did indeed allude to "bad purpose" as one possible reading of willfulness, it did not restrict it so in the context of the Act: "[T]he *Bryan* opinion acknowledges that a disregard of a known legal obligation is sufficient to establish a willful violation." *Id*. at 465 (internal quotation marks and brackets omitted); *see also id*. at 467 (Clay, J., concurring) ("[*Bryan*] held that evidence showing knowledge that the conduct is unlawful is all that is required to prove a willful violation of the Gun Control Act and has noted that disregard of a known legal obligation under the Act is certainly sufficient to establish a willful violation." (internal quotation marks and brackets omitted)).

In other words, our opinion in *Appalachian Resources* is not inconsistent with *Bryan*. As such, we are clearly bound by the prior panel opinion in *Appalachian Resources*. "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an *inconsistent* decision of the United States Supreme Court requires modification of the

decision or this Court sitting en banc overrules the prior decision." *Dingle v. Bioport Corp.*, 388 F.3d 209, 215 (6th Cir. 2004) (emphasis added) (quoting *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Based on *Appalachian Resources*, "willfulness" under the Gun Control Act does not require the heightened showing of "bad purpose." Rather, evidence of an individual's "disregard of a known legal obligation" is entirely sufficient. We note that several of our sister circuits have recently reached the exact same conclusion when confronted with firearms license revocations under the same provision at issue here. *See, e.g., Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 498 (7th Cir. 2006) ("The *Bryan* Court did not hold that a showing of "bad purpose" is required before ATF can revoke the license of a gun dealer who violates the Act despite knowledge of its requirements. Rather, the Court simply held that a bad purpose may be sufficient to demonstrate purposeful disregard for or plain indifference to the law, where there is no evidence a party was aware of the requirements of the law. In this case, it is clear that [petitioner] was aware of its obligations under the Act."); *RSM, Inc. v. Herbert*, 466 F.3d 316, 321 (4th Cir. 2006) ("The [*Bryan*] Court recognized . . . that the willfulness requirement was also satisfied by a showing of, among other things, a disregard of or an indifference to known legal obligations.").

Procaccio further maintains that *Appalachian Resources* is inconsistent with Congress's intent when it passed the Act. In support of this theory, he provides nothing more than a lengthy quotation from the March 28, 2006 testimony of one "Richard E. Gardiner, Esq." before the House Judiciary Committee. Appellant's Br. at 13-14; Joint App'x at 499-500. However, Procaccio does not put forward any argument as to *why* this panel should be persuaded by Gardiner's testimony. Mr. Gardiner is by no means a disinterested witness: he is a private practitioner who for over twenty-

five years has represented firearms dealers, manufacturers, and importers in all manner of proceedings, including defense of license revocations pursuant to 18 U.S.C. § 923(e). Furthermore, for every individual who testifies before Congress as to one conclusion, one can almost always find another individual—usually an "Esquire," in fact—who testified to the exact opposite conclusion. Procaccio's congressional intent argument would also seem to be foreclosed by *Bryan*, the very case on which he attempts to rely. *See* 524 U.S. at 196 (noting that the legislative history of § 924(a)(1)(D) "is too ambiguous to offer petitioner much assistance").[2] Thus, with respect to congressional intent, Procaccio gives this panel precious little to chew on, and what little he does provide seems flatly contradicted by the Supreme Court's prior findings in *Bryan*.

**B**

Procaccio completely fails to develop his second issue for review — that is, he completely fails to make the alternative argument that he should be entitled to relief even under the *Appalachian Resources* definition of willfulness. He could, for example, have maintained that he did not "disregard a known legal obligation" under any section of the Act, and thus his license should not have been revoked, or at the very least his claims should not have been disposed of on summary judgment. *See, e.g., Article II Gun Shop*, 441 F.3d at 498-99 (Manion, J., dissenting). He does not

---

[2]Admittedly, the *Bryan* Court was considering the congressional intent behind the willfulness requirement as added to *§ 924(a)(1)(D)* of the Act by a 1986 amendment known as the Firearms Owners' Protection Act ("FOPA"). *See Bryan*, 524 U.S. at 186-88. These 1986 amendments did nothing to alter the "willfully violated" language of *§ 923(e)*, however, because they only involved changes to §§ 921, 922, and 924 of the Act. *Id*. But given Procaccio's insistence that *Bryan* necessarily controls the outcome of the instant case (even though it considers "willfully violated" in the context of § 924, not § 923), it would make little sense for him to parse *Bryan* so finely, nor does he even make an effort to do so.

make this argument in any meaningful way, however, relying instead on the longshot that this panel might overturn *Appalachian Resources*. Appellant's Br. at 10 ("[Petitioner] contends that, in the instant case, the definition of willfulness as defined by the United States Supreme Court in *Bryan* . . . *constitutes the controlling law*. [Petitioner] further contends that, *in accordance with the Bryan standard, he did not willfully violate the [Act]*, 18 U.S.C. § 923(g)(1)(A), and the ATF[] had no cause to revoke his Federal Firearms License." (emphasis added)). Given Procaccio's stubborn insistence on *Bryan*, we therefore consider this alternative argument waived. *See Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) ("We ordinarily consider issues not fully developed and argued to be waived.").

Procaccio also makes a cursory argument that his relatively few violations and speedy compliance with ATF requirements following the inspections somehow undercut the ATF's authority to revoke his license. This Court, however, has recognized that even a single violation of the relevant statute and regulations constitutes a sufficient basis for revoking a firearms license. *See Appalachian Resources*, 387 F.3d at 464. Moreover, as a district court pointed out in a similar case, "[w]hile these repeat episodes could be characterized as minor or insignificant, these repetitions, nevertheless, undermine the petitioner's claim to have corrected his ways." *Cisewski v. Department of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 773 F. Supp. 148, 152 (E.D. Wis. 1991). Procaccio's argument that his post-inspection efforts are probative of his willfulness is without merit. What matter are his actions at the time the violations occurred. *See Cucchiara v. Sec'y of Treasury*, 652 F.2d 28, 30 (9th Cir. 1981) ("The fact that [petitioner] has spent a great deal of money trying to correct his faulty recordkeeping system, after the violations, . . . is immaterial to the question of

willfulness at the time the violations occurred."); *Sturdy v. Bentsen*, No. 97-1786, 1997 U.S. App. LEXIS 27671, at *5 (8th Cir. Oct. 6, 1997) ("[A]fter-the-fact efforts to correct the specific violations pointed out to [petitioner] are irrelevant to the issue of willfulness at the time the errors occurred.").

III

Procaccio devotes only six pages of his brief to actual argument, and virtually all of that focuses on why this Court's decision in *Appalachian Resources* contradicts the Supreme Court's decision in *Bryan* and should therefore be reversed. Given that the two cases are in no way contradictory, we find little merit in Procaccio's appeal, and we thus **AFFIRM** the decision of the district court.